STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. ALBERT GUERRA, JR., DEFENDANT-RESPONDENT.

Argued November 9, 1982—Decided May 16, 1983.

*Victoria Curtis Bramson,* Deputy Attorney General, argued the cause of appellant (*Irwin I. Kimmelman,* Attorney General of New Jersey, attorney).

*James Logan, Jr.,* argued the cause for respondent.

The opinion of the Court was delivered by

HANDLER, J.

This case raises the issue of whether police who, upon lawfully stopping an automobile, detect a strong odor of raw unburned marijuana emanating therefrom, may remove the vehicle to police headquarters and then search the automobile after obtaining permission over the telephone from a judge to conduct such a search.

Under the facts of this case, we hold that the warrantless search of the automobile, including particularly its trunk and the packages found therein, was justified by probable cause and the "automobile exception" to the written warrant requirement, and therefore was constitutionally valid. We hold further that, although the telephone authorization to search was invalid in light of our decisions today in the companion cases of *State v. Valencia,* 93 *N.J.* 126 (1983) and *State v. Apostolis,* 93 *N.J.* 143 (1983), its invalidity does not otherwise affect the validity of the search of the automobile and its contents.

I

On March 20, 1979 at approximately 10:50 p.m., State Troopers Robert Rice and Eric Willhouse were patrolling the New Jersey Turnpike. They noticed a car travelling northbound with

its left taillight out and pulled the car over to issue a warning. The car had Michigan license plates and was driven by defendant Albert Guerra. There was also a passenger, John Mallon. Mr. Guerra produced a Rhode Island driver's license and the agreement under which the car had been rented in Florida the previous day. While interviewing Guerra as to why he, Guerra, and not Mallon, was driving the automobile as required by the rental contract, Trooper Rice detected a strong odor of raw unburned marijuana emanating from the interior of the car. He shined his flashlight into the car seeking to find the source of the odor. Trooper Rice saw only a small overnight suitcase which he concluded could not have been the source of the odor. Rice then informed Guerra and Mallon that he suspected that there was marijuana in the car. He sought their consent to open the trunk, but they refused. The two defendants and their car were then taken to the Moorestown State Police station.

At the suppression hearing the defendants offered a slightly different version of the facts. They claimed that Rice, upon approaching the car and asking for the driver's credentials, said that the car was "hanging low in the trunk" and that he wanted to look in the trunk. Guerra added that Rice commented to his partner Willhouse, "It looks like we got a load here." Mallon testified that on the trip to Moorestown he observed that the taillights of the rented car were working.

At the station the defendants were confined to the reception area while the officers sought a telephonic search warrant. At that time Rice handed Guerra a warning for a defective taillight. Guerra testified that this marked his first knowledge of the defective light. At about 1:00 a.m., March 21, Rice called a Superior Court Judge in Salem County and asked for a warrant to search the car. The judge authorized the search over the telephone. At 1:35 a.m. Rice executed the warrant and opened the trunk of the car. Rice testified to seeing "white clear plastic bags" of marijuana. A moment later he described the package as being "white plastic." He added that when he sliced open the bags, he did not see any talc powder, which is often

used to disguise marijuana's odor. The three bales and three bags contained marijuana weighing a total of 176.5 pounds. Guerra and Mallon were then placed under arrest.

Defendant moved to suppress the evidence found in the packages, arguing that it was seized subject to an unlawful search. The court denied this motion. It found the warrantless search of the automobile trunk and its contents to be justified because the smell of "the marijuana, coupled with the vehicle riding low certainly constituted probable cause to search the trunk." Further, the court, applying the reasoning of *Chambers v. Maroney*, 399 *U.S.* 42, 90 *S.Ct.* 1975, 26 *L.Ed.2d* 419 (1970), found that "if a warrantless search could have been made at the scene, it could have been made at the barracks." The Appellate Division in an unreported *per curiam* opinion reversed the trial court's denial of defendant's motion to suppress. It focused upon the telephonic search warrant and reasoned that insufficient grounds existed for its issuance in place of a written warrant. Therefore, the search of the packages in the vehicle's trunk conducted at the police barracks, pursuant to the telephonic warrant and more than two hours after the car was initially stopped, was ruled invalid. We granted the State's petition for certification. 89 *N.J.* 423 (1982). We reverse the judgment of the Appellate Division.

II

Both lower courts found that the police lawfully stopped the automobile. The troopers then detected a strong odor of marijuana which, as found by the trial court, could not have emanated from the small suitcase in the car's interior. We therefore conclude that they had probable cause to search the trunk for evidence of contraband. *See State v. Kahlon*, 172 *N.J.Super.* 331, 338 (App.Div.1980), *cert. den. sub nom. Kahlon v. New Jersey*, 454 *U.S.* 818, 102 *S.Ct.* 97, 70 *L.Ed.2d* 88 (1981). *Cf. State v. Patino*, 83 *N.J.* 1 (1980) (extent of search of an automobile depends upon the degree of probable cause). The packages

found in the trunk were also validly searched. Regardless of the visibility of their contents, the size of the packages and the odor of marijuana that they emitted clearly suggested that they contained contraband. *Arkansas v. Sanders,* 442 *U.S.* 753, 764 n. 13, 99 *S.Ct.* 2586, 2593–94 n. 13, 61 *L.Ed.2d* 235, 245 n. 13 (1979); *Robbins v. California,* 453 *U.S.* 420, 427–29, 101 *S.Ct.* 2841, 2846–47, 69 *L.Ed.2d* 744, 751–52 (1981); *Cf. United States v. Ross,* 456 *U.S.* 798, 102 *S.Ct.* 2157, 72 *L.Ed.2d* 572 (1982) (holding that upon probable cause to search a lawfully stopped vehicle, police may conduct a warrantless search of every part of the vehicle and its contents that may conceal the object of the search). We further note that the legality of the search is unaffected by the removal of the vehicle and defendants to the police barracks. As we recently stated in *State v. Martin,* 87 *N.J.* 561, 568 (1981), *"Chambers [v. Maroney, supra,]* and its progeny firmly establish that when police have probable cause to conduct a warrantless search of an automobile at the spot where the officers encounter the car, they may constitutionally remove the vehicle to police headquarters and there conduct the search without first obtaining a warrant. [Citations omitted.]"

### III

The Appellate Division, although agreeing with the trial court that the car was lawfully stopped and that the strong odor of marijuana established probable cause to search the trunk of the car, decided that a search warrant should have been obtained. Upon that determination it examined the telephone application for authorization to search made later from police barracks. Applying the "most compelling circumstances" test, *see State v. Liberti,* 161 *N.J.Super.* 575, 582–83 (App.Div.1978), certif. den., 79 *N.J.* 502 (1979), the court concluded that the issuance of telephone authorization was not justified under the circumstances and accordingly ruled the search invalid.

We acknowledge that if the telephone authorization of the search were viewed in isolation as the sole basis for determining

the validity of the search in this case, the result reached by the Appellate Division would be correct. In *State v. Valencia,* 93 *N.J.* 126 (1983), we recognized that a search conducted pursuant to a telephone application and authorization would be valid only if the State demonstrated that the issuing judge found both exigent circumstances to justify the use of a telephone application instead of the written search warrant as prescribed by our court rules, as well as evidence of probable cause, and, further, that the procedures surrounding the application guaranteed the reliability of the decisional process involved in making those determinations. *Id.* at 139. Under these standards the telephone-authorized search would fail. There was no showing of by the State that the issuing judge properly found exigent circumstances to justify reliance upon the use of the telephone warrant nor was there demonstrated compliance with the minimal procedural safeguards necessary to assure reliability of the judicial decision authorizing the search.

■ Nevertheless, we do not agree with the Appellate Division's conclusion that the search itself was invalid because the telephone authorization was defective. As noted, the warrantless search of the trunk and its contents was clearly justified under a recognized exception to the warrant requirement. *Ante* at 148. Noncompliance with the telephone authorization standards was in no way material to the officers' earlier determination of probable cause to search when they lawfully stopped the vehicle. Nor did such noncompliance, even if material, dilute or impugn the exception to the warrant requirement relied on in this case.

It has been recognized in various contexts that if the validity of a search can be sustained independently on objective grounds demonstrating reasonableness, the existence of other defects that do not derogate from the overall objective reasonableness of the search or impugn the integrity of the judicial process should not be relied upon to invalidate the search. *See Scott v. United States,* 436 *U.S.* 128, 138–39 & n. 13, 98 *S.Ct.* 1717,

1723–24 & n. 13, 56 *L.Ed.*2d 168, 178 & n. 13 (1978); *State v. Williams,* 84 *N.J.* 217, 225 (1980); *see also State v. Bisaccia,* 58 *N.J.* 586 (1971). In these circumstances, noncompliance with the standards necessary to secure a valid telephone authorization to search has no bearing upon a determination that the warrantless search of the automobile and its contents was valid.

## IV

The motion to suppress the evidence obtained as a result of the search of the automobile trunk and its contents was correctly denied by the trial court and the evidence was properly admitted. Accordingly, the judgment of the Appellate Division is reversed.

*For reversal*—Chief Justice WILENTZ and Justices CLIFFORD, SCHREIBER, HANDLER, POLLOCK and O'HERN—6.

*For affirmance*—None.