NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-0497-15T3

STATE OF NEW JERSEY,

 Plaintiff-Respondent,

v.

SHAREEF HOLDER, a/k/a PUMPKIN
HOLDER, SHAREEF T. HOLDER,

 Defendant-Appellant.

 Submitted February 15, 2017 – Decided March 1, 2017

 Before Judges Simonelli and Carroll.

 On appeal from the Superior Court of New
 Jersey, Law Division, Middlesex County,
 Indictment No. 14-01-0021.

 Joseph E. Krakora, Public Defender, attorney
 for appellant (Marcia Blum, Assistant Deputy
 Public Defender, of counsel and on the brief).

 Andrew C. Carey, Middlesex County Prosecutor,
 attorney for respondent (Jason M. Boudwin,
 Assistant Prosecutor, of counsel and on the
 brief).

PER CURIAM

 Defendant Shareef Holder appeals from an order denying his

motion to suppress evidence seized from the trunk of his car
pursuant to a search warrant. Defendant also appeals from the

judgment of conviction imposing an aggregate twenty-one-year

prison term with an eighty-five-percent parole ineligibility

period pursuant to the No Early Release Act (NERA), N.J.S.A. 2C:43-

7.2(a). For the reasons that follow, we affirm.

 I.

 The telephonic search warrant was based on the recorded oral

affidavit of Investigator Scott Crocco of the Middlesex County

Prosecutor's Office (MCPO). Crocco had been assigned to the MCPO's

Homicide Unit since January 2008, and had "multiple different

trainings and schooling [] in different areas related to homicide

and fatal crashes."

 Crocco averred that at approximately 9:53 p.m. on September

28, 2013, New Brunswick Police Officer Keven Hendricks stopped

defendant's vehicle after observing it pass by with substantial

front end damage from an accident that appeared to have just

occurred. Defendant exited his vehicle but then re-entered it and

fled the scene at a high rate of speed, traveling in excess of 100

miles per hour. Hendricks initially gave chase, but discontinued

his pursuit due to safety concerns. A short time later, defendant

collided with three other vehicles at an intersection, killing the

twenty-two-year-old driver of one of the cars. Defendant exited

his vehicle without any substantial injuries, but he appeared to

 2 A-0497-15T3
be "under the influence of either narcotics or drugs in that his

[] speech was slurred and his motor skills were very slow."

Defendant was transported to a local hospital, where police

observed "a strong smell of alcoholic beverage coming from his

breath." At the accident scene, officers observed a glass vial

of what appeared to be marijuana in plain view on the passenger

floor, and could smell marijuana through the car window.

 A warrantless blood sample was taken from defendant by the

North Brunswick Police Department prior to Crocco's arrival at the

hospital. Based on Crocco's sworn testimony, Judge Arnold L.

Natali, Jr. issued a warrant to take a second blood sample from

defendant and to search his car, its passenger compartment, and

"all other accessible areas . . . including the trunk,

compartments, and all containers or other items." In defendant's

trunk, police found 948 glassine packets of heroin. Police also

found twenty-five bags of marijuana and a digital scale. A

laboratory analysis of "defendant's blood sample proved positive

for ethyl alcohol and drugs (THC-COOH-a marijuana metabolite).

The BAC was determined to be 0.138%."

 Defendant was indicted and charged with: (1) first-degree

aggravated manslaughter by recklessly causing death under

circumstances manifesting extreme indifference to human life,

N.J.S.A. 2C:11-4a(1) (count one); (2) first-degree aggravated

 3 A-0497-15T3
manslaughter by causing death while fleeing or attempting to elude

a police officer, N.J.S.A. 2C:11-4a(2) (count two); (3) second-

degree eluding, N.J.S.A. 2C:29-2b (count three); (4) third-degree

possession of heroin, N.J.S.A. 2C:35-10a(1) (count four); (5)

second-degree possession with intent to distribute heroin,

N.J.S.A. 2C:35-5a(1) and N.J.S.A. 2C:35-5b(2) (count five); and

(6) fourth-degree possession with intent to distribute marijuana,

N.J.S.A. 2C:35-5a(1) and N.J.S.A. 2C:35-5b(12) (count six).

 Defendant moved to suppress the first blood sample taken

without a warrant, and the second blood sample and drug evidence

seized after the search warrant issued. Following a hearing,

Judge Joseph Paone suppressed the warrantless blood sample, but

denied the motion to suppress the second sample and the drug

evidence.1 Pertinent to this appeal, in his thorough oral opinion,

Judge Paone reasoned:

 Not only did Crocco advise [Judge] Natali that
 [MCPO Investigator Greg] Morris observed a
 small glass vial of marijuana in the passenger
 compartment, he also swore to [Judge] Natali
 that Morris smelled marijuana emanating from
 the vehicle. Those facts taken together
 amounted to a well grounded suspicion that the
 marijuana could be found in the trunk of []
 defendant's car. It is entirely reasonabl[e]
 for Judge Natali to assume . . . that the
 smell of marijuana could not have come from

1
 The State did not appeal the suppression of the first blood
sample, nor does defendant challenge the denial of the motion to
suppress the second blood sample.

 4 A-0497-15T3
 the small glass container found on the
 passenger side floor and that the trunk
 contained additional contraband. Therefore,
 based on Crocco's affidavit, there existed
 probable cause to authorize the search of the
 trunk[.]

 On January 9, 2015, defendant pled guilty to count one, first-

degree aggravated manslaughter, and count five, second-degree

possession with intent to distribute heroin. The remaining charges

were dismissed pursuant to the negotiated plea agreement. On

February 27, 2015, the court sentenced defendant in accordance

with the plea agreement to a twenty-one-year term of imprisonment

subject to NERA on count one, and a concurrent extended term of

twelve years imprisonment with forty-five months of parole

ineligibility on count five.

 On appeal, defendant raises the following issues for our

consideration:

 POINT I

 BECAUSE THE POLICE DID NOT HAVE PROBABLE CAUSE
 TO SEARCH THE TRUNK OF THE CAR, THE DRUGS
 SEIZED FROM THE TRUNK MUST BE SUPPRESSED.

 POINT II

 THE SENTENCE OF [TWENTY-ONE] YEARS, WITH A
 MANDATORY PAROLE TERM OF ALMOST [EIGHTEEN]
 YEARS IS EXCESSIVE AND NOT BASED ON
 CONSIDERATION OF RELEVANT MITIGATION.

 5 A-0497-15T3
 II.

 We first address defendant's challenge to the search warrant.

Defendant argues, as he did before the trial court, that the

warrant was invalid because the police lacked probable cause to

believe the trunk contained drugs. We disagree.

 "[A] search executed pursuant to a warrant is presumed to be

valid" and "a defendant challenging its validity has the burden

to prove 'that there was no probable cause supporting the issuance

of the warrant or that the search was otherwise unreasonable.'"

State v. Jones, 179 N.J. 377, 388 (2004) (citation omitted).

"Accordingly, courts 'accord substantial deference to the

discretionary determination resulting in the issuance of the

[search] warrant.'" State v. Keyes, 184 N.J. 541, 554 (2005)

(alteration in original) (citation omitted).

 "[A]n appellate court's role is not to determine anew whether

there was probable cause for the issuance of the warrant, but

rather, whether there is evidence to support the finding made by

the warrant-issuing judge." State v. Chippero, 201 N.J. 14, 20-

21 (2009). "Doubt as to the validity of the warrant 'should

ordinarily be resolved by sustaining the search.'" Keyes, supra,

184 N.J. at 554 (citations omitted).

 To determine whether there was probable cause, we look only

at the information within "'the four corners of the supporting

 6 A-0497-15T3
affidavit.'" Chippero, supra, 201 N.J. at 26 (citation omitted).

This probable cause inquiry requires courts "to make a practical,

common sense determination whether, given all of the

circumstances, there is a fair probability that contraband or

evidence of a crime will be found in a particular place." State

v. Marshall, 199 N.J. 602, 610 (2009) (citation omitted).

 Defendant relies, as he did before the trial court, on State

v. Patino, 83 N.J. 1, 12-13 (1980), to support his position that

the police lacked probable cause to search his vehicle's trunk.

In Patino, the police stopped the defendant's automobile for a

routine motor vehicle check, without witnessing any traffic

violation or other suspicious activity. Id. at 5. Upon requesting

the occupants' credentials, the officer observed a small clear

plastic bag containing suspected marijuana on the floor next to

the front seat. Ibid. The occupants were removed from the car

and placed under arrest for possession of marijuana. Ibid. After

finding nothing else incriminating in the passenger area, the

officer directed Patino to unlock the trunk, where a shopping bag

containing cocaine was found. Id. at 6. In invalidating the

seizure of the trunk's contents, the Court reasoned:

 [T]he bare circumstance of a small amount of
 marijuana does not constitute a self-evident
 proposition that more marijuana or other
 contraband might be elsewhere in the
 automobile. The presence of the marijuana

 7 A-0497-15T3
 alone does not under these facts give rise to
 an inference that would lead a police officer
 of ordinary prudence and experience
 conscientiously to entertain a strong
 suspicion that additional criminal contraband
 is present in the trunk of the automobile.
 The officer knew of no prior history of
 illegal conduct by these defendants. There
 was no erratic driving, suspicious gestures,
 or other incriminating activity observed.
 Nothing found in the interior of the passenger
 area or in the conduct of the defendants
 generated any suspicion of a drug cache in the
 trunk or of any personal danger to the
 officer.

 [Id. at 12.]

 In the present case, the trial court rejected defendant's

reliance on Patino and instead found that two other cases

persuasively supported the State's position. The court first

cited State v. Kahlon, 172 N.J. Super. 331 (App. Div. 1980), cert.

denied sub nom., Kahlon v. New Jersey, 454 U.S. 818, 102 S. Ct.

97, 70 L. Ed. 2d 88 (1981). In Kahlon, the defendant's vehicle

was observed traveling on Interstate Highway 287 at an unusually

slow speed, creating a traffic hazard. Id. at 335. When the

defendant opened his car window, the officer smelled an odor he

believed to be burning marijuana. Id. at 336. After the defendant

admitted smoking marijuana in the vehicle, the officer searched

the passenger compartment and discovered a half-burned marijuana

cigarette in the ashtray and a half-ounce of marijuana and rolling

papers in the passenger side visor. Ibid. The officer continued

 8 A-0497-15T3
to smell raw marijuana and, after searching the backseat without

success, he removed the keys from the ignition and opened the

trunk. There, he found thirty pounds of marijuana in bags, a

scale, and over $3000. Id. at 337. In concluding that the search

of the trunk was lawful, we found that

 [the officer's] inability to pinpoint the
 source of the smell of unburned marijuana
 while in [the rear interior] of the automobile
 although it appeared to emanate from the rear
 of the vehicle, together with the marijuana
 already found in the car, reasonably could
 leave him to conclude, . . . that the odor
 came from the car's trunk and accordingly
 established probable cause to search the
 trunk[.]

 [Id. at 338 (citations omitted).]

 In State v. Guerra, 93 N.J. 146 (1983), the second case on

which the trial court based its decision, police stopped

defendant's car after noticing a taillight out. Id. at 148-49.

While speaking with the driver, the officer detected a strong odor

of marijuana emanating from the interior of the car. The officer

shined his flashlight into the car, but observed only a small

overnight suitcase that he concluded could not be the source of

the odor. Id. at 149. After the occupants refused consent to

search the trunk, the vehicle was taken to police headquarters.

The police obtained a telephonic warrant to search the trunk,

where they discovered a large quantity of marijuana. Id. at 149-

 9 A-0497-15T3
50. On these facts, the Court concluded the police had probable

cause to search the trunk for evidence of contraband. Id. at 150.

 We agree with the trial court's analysis. Here, unlike

Patino, the police did not act on the mere presence of a small

vial of marijuana in defendant's car. Rather, after being stopped

by police, defendant fled at a speed in excess of 100 miles per

hour and collided with three other cars, resulting in one driver's

death. Defendant appeared to be under the influence of drugs, and

smelled of alcohol. Standing at the scene of the four-car

collision, the officers were able to smell marijuana coming from

inside defendant's car. Similar to Guerra, it was reasonable for

the police to assume the small vial could not account for the

odor, and to search the car, including its trunk, for the source

of the odor. As previously noted, the concept of probable cause

does not require certainty but only "a fair probability that

contraband or evidence of a crime will be found in a particular

place." Chippero, supra, 201 N.J. at 28 (citation omitted). We

therefore conclude there was probable cause to issue the search

warrant for the car, including its trunk, and sufficient evidence

in the record to support the denial of defendant's motion to

suppress the drug evidence found there.

 10 A-0497-15T3
 III.

 Despite the plea agreement, defendant next contends his

aggregate twenty-one–year NERA sentence is excessive. Defendant

argues the sentencing judge should have found mitigating factor

four, that there were substantial grounds tending to excuse or

justify the defendant's conduct, though failing to establish a

defense, N.J.S.A. 2C:44-1(b)(4). This argument requires little

discussion.

 Sentencing determinations are reviewed on appeal with a

highly deferential standard. State v. Fuentes, 217 N.J. 57, 70

(2014).

 The appellate court must affirm the sentence
 unless (1) the sentencing guidelines were
 violated; (2) the aggravating and mitigating
 factors found by the sentencing court were not
 based upon competent and credible evidence in
 the record; or (3) "the application of the
 guidelines to the facts of [the] case makes
 the sentence clearly unreasonable so as to
 shock the judicial conscience."

 [Ibid. (quoting State v. Roth, 95 N.J. 334,
 364-65 (1984)).]

Once the trial court has balanced the aggravating and mitigating

factors set forth in N.J.S.A. 2C:44-1(a) and -1(b), it "may impose

a term within the permissible range for the offense." State v.

Bieniek, 200 N.J. 601, 608 (2010). See also State v. Case, 220

N.J. 49, 65 (2014) (instructing that appellate courts may not

 11 A-0497-15T3
substitute their judgment for that of the sentencing court,

provided that the "aggravating and mitigating factors are

identified [and] supported by competent, credible evidence in the

record").

 Here, the judge found aggravating factors three, "[t]he risk

that . . . defendant will commit another offense," N.J.S.A. 2C:44-

1(a)(3); six, "[t]he extent of the defendant's prior criminal

record and the seriousness of the offenses of which he has been

convicted," N.J.S.A. 2C:44-1(a)(6); and nine, "[t]he need for

deterring the defendant and others from violating the law,"

N.J.S.A. 2C:44-1(a)(9). The judge found no mitigating factors.

 Defendant's pre-sentence report (PSR) indicates he was

evaluated in 2003, and "found to be psychologically inaccessible,"

"bears emotional scars from past traumatic events," and "has

emotional disturbances, deep, internalized anxiety and ambivalence

relative to love." The PSR also reveals defendant has a history

of regular marijuana and alcohol use, and he admitted he was under

the influence of both those substances when he committed this

offense. However, any possible mitigating factor was indubitably

outweighed by the well-supported aggravating factors. Defendant

has an extensive juvenile and adult criminal history, including a

history of drug-related offenses that threaten and cause serious

 12 A-0497-15T3
harm. See State v. Tarver, 272 N.J. Super. 414, 435 (App. Div.

1994).

 Defendant was fully aware of his potential exposure; he

entered a negotiated plea agreement providing for the very sentence

he received, and he confirmed during the plea hearing that he

understood the sentence. The sentence is well within the

permissible range, is supported by credible evidence in the record,

and does not shock the judicial conscience. Accordingly, we

discern no abuse of discretion.

 Affirmed.

 13 A-0497-15T3